**[The Debtor in this case is a small business. As a result, the Debtor is permitted to distribute and has distributed this disclosure statement before its final approval by the court. If an objection to this disclosure statement is filed by a party in interest, final approval of this disclosure statement will be considered at or before the hearing on confirmation of the Plan.]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                      :

                                                            :        Chapter 11

UNLOCKD MEDIA, INC., *et al.*,[1]                            :

                                                            :        Case No. 18-13243(JLG)

                                    Debtors.                :

                                                            :        (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SMALL BUSINESS DEBTORS' COMBINED PLAN
## OF LIQUIDATION AND DISCLOSURE STATEMENT

**MAYERSON & HARTHEIMER, PLLC**
845 Third Avenue, 11th floor
New York, NY 10022
(646) 778-4380
Sandra E. Mayerson, Esq.
David H. Hartheimer, Esq.

*Counsel for Debtors and*
*Debtors-in-Possession*

Dated:  November 8, 2019

---

[1] The Debtors in these chapter 11 cases, along with the last four numbers of each Debtor's taxpayer identification number are: Unlockd Media, Inc., Tax ID No. XX-XX 2901 and Unlockd Operations US Inc., Tax ID No. XX-XX0878.

## SMALL BUSINESS DEBTORS' COMBINED PLAN OF

## LIQUIDATION AND DISCLOSURE STATEMENT

This Combined Plan of Liquidation and Disclosure Statement is presented to you to inform you of the proposed Plan for liquidating the assets of Unlockd Media, Inc., and Unlockd Operations US Inc., which are being combined into one entity pursuant to this Plan, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY [Objection Date/time].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [Close of Vote Date].  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Mayerson & Hartheimer, 845 3rd Ave., 11th floor, New York, NY 10022. Any ballot received after 5 PM, prevailing Eastern time, on [Close of Vote Date] will not be counted as a vote on the Plan.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [Confirmation Hearing Date/Time] IN COURTROOM 601 AT THE UNITED STATES BANKRUPTCY COURT, ONE BOWLING GREEN, NEW YORK, NY 10004.**

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

November 8, 2019
Mayerson & Hartheimer, PLLC
845 3rd Ave., 11th floor
New York, NY 10022
646-778-4380
lawyers@mhlaw-ny.com
Sandra E. Mayerson, Esq., and David H. Hartheimer, Esq.
Counsel for the Debtors and Debtors-in-Possession

# TABLE OF CONTENTS

                                                                    **Page**

ARTICLE  1        DEFINITIONS,  RULES  OF   INTERPRETATION  AND
                  COMPUTATION OF TIME                                5
       A.    Scope of Definitions                                   5
       B.     Definitions                                           5
       C.    Rules of Construction                                  14
       D.    Computation of Time.                                   15
ARTICLE 2  BACKGROUND OF THE DEBTORS                                15
       2.1   Filing of The Debtors' Chapter 11 Cases               15
       2.2   History and Nature of the Debtors' Business           15
       2.3   Legal Structure and Ownership                         16
       2.4   Debtors' Assets                                       16
       2.5   Debtor's Liabilities                                  16
       2.6   Events Leading to the Filing of the Chapter 11 Cases  17
       2.7   Significant Events During the Chapter 11 Cases        18
       2.8   Projected Recovery of Avoidable Transfers             19
ARTICLE 3  TREATMENT OF UNCLASSIFIED CLAIMS
       3.1   Administrative Expense Claims                         19
       3.2    Priority Tax Claims                                  20

ARTICLE 4  CLASSIFICATION OF CLAIMS AND INTERESTS                  21
       4.1   General                                               21
ARTICLE  5    TREATMENT  OF  CLASSES  OF  CLAIMS  AND  INTEREST  UNDER
              THE PLAN                                              22
       5.1   Class 1: Priority Non-Tax Claims                      22
       5.2   Class 2: General Unsecured Non-Insider Claims         22
       5.3   Class 3: General Unsecured Insider Claims             23
       5.4   Class 4: Equity Interests                             23
ARTICLE 6  ACCEPTANCE OF REJECTION OF THE PLAN                     24
       6.1   Voting Classes                                        24
       6.2   Acceptance of Impaired Classes of Claims              24
ARTICLE 7  MEANS OF IMPLEMENTATION OF THE PLAN                     24
       7.1   Conditions Precedent to the Effective Date            24
       7.2   Vesting of Assets of the Estate                       24
       7.3   Substantive Consolidation                             25
       7.4   Liquidation Trust                                     25
       7.5   Nonconsensual Confirmation                            29
       7.6   Closing of Chapter 11 Cases                           30
       7.7   Dissolution of the Debtors and Resignation of its Directors  30
ARTICLE 8  EXECUTORY CONTRACTS UNDER THE PLAN                      30
       8.1   Payment Up to Allowed Claim                           30

2

|  |  |  |  |
|---|---|---|---|
| 8.2 | Dissolution of the Debtors and Resignation of its Directors | | 30 |
| 8.3 | Time of Payment | | 31 |
| 8.4 | Disputed Claims Reserves | | 31 |
| 8.5 | Estimation of Claims | | 31 |
| 8.6 | Objections | | 32 |
| 8.7 | Updates to Claim Register Without Objection | | 32 |
| 8.8 | Fractional Cents | | 32 |
| 8.9 | Setoffs | | 32 |
| 8.10 | Dissolution of the Debtors and Resignation of its Directors | | 33 |
| 8.11 | Time Bar to Cash Payments by Check | | 33 |
| ARTICLE 9 | EXECUTORY CONTRACTS UNDER THE PLAN | | 33 |
| 9.1 | Rejection of Executory Contracts | | 33 |
| 9.2 | Rejection Claims | | 34 |
| ARTICLE 10 | RETENTION OF SUBJECT MATTER JURISDICTION AND CAUSES OF ACTION | | 34 |
| 10.1 | Retention of Subject Matter Jurisdiction | | 34 |
| 10.2 | Retention of Causes of Action | | 36 |
| ARTICLE 11 | MODIFICATION OF PLAN | | 37 |
| 11.1 | Prior to the Confirmation Order | | 37 |
| 11.2 | After the Confirmation Order | | 37 |
| ARTICLE 12 | PROVISIONS REGARDING INJUNCTIONS, EXCULPATION AND THIRD PARTY RELEASES | | 37 |
| 12.1 | Retention of Subject Matter Jurisdiction | | 37 |
| 12.2 | Releases | | 38 |
| 12.3 | Exculpation | | 38 |
| ARTICLE 13 | FEASIBILITY OF THE PLAN | | 38 |
| 13.1 | Feasibility | | 38 |
| ARTICLE 14 | LIQUIDATION VALUATION | | 39 |
| 14.1 | Liquidation Analysis | | 39 |
| ARTICLE 15 | MISCELLANEOUS PROVISIONS | | 39 |
| 15.1 | Governing Law | | 39 |
| 15.2 | Notices | | 40 |
| 15.3 | Reservation of Rights | | 40 |
| 15.4 | Binding Effect | | 41 |

### SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Unlockd Media, Inc. ("Media"), and Unlockd Operations US Inc. ("Operations", and together with Media, the "Debtors"), the debtors and debtors-in-possession in these cases, have no assets other than cash and causes of action, particularly antitrust causes of action against Google LLC and various of its affiliates. Accordingly, the Debtors are proposing a straightforward liquidating plan in which all of their assets and all of their liabilities will be combined through a process known as substantive consolidation. Substantive consolidation will eliminate all intercompany debt between Media and Operations, which otherwise would be substantial. All of the assets and all of the liabilities of the consolidated entity will be transferred to a liquidation trust, which will pursue the various causes of action. Upon conclusion of the causes of action, all proceeds will be distributed in accordance with a Trust Waterfall as follows: (1) Payment of all costs of the Liquidation Trust, including, without limitation, repayment of any litigation funding, payment of the fees and expenses of professionals; payment of the fees and expenses of the Liquidation Trustee; payment of the fees and expenses of any experts, witnesses, and personnel of Debtors working on the litigation and/or liquidation; and all other fees and expenses; then (2) Payment of all unpaid allowed administrative expenses of the Chapter 11 with interest at 4% per annum from the Effective Date; then (3) Payment of all allowed unpaid priority tax claims pro rata until all such claims have been paid in full; then (4) Payment of all allowed unpaid priority non-tax claims pro rata until all such claims have been paid in full; then (5) Payment of all allowed, non-insider general unsecured claims pro rata until all such claims have been paid in full; then (6) Payment of all allowed insider general unsecured claims pro rata until all such claims have been paid in full; and then (7) the remaining amount, if any, pro rata to the holders of equity interests in the Debtors. The amount of the payments to creditors and interest holders depends entirely on the success of any litigation brought by the Liquidation Trust. There can be no guarantee that there will be any payments whatsoever to creditors; however, if the Plan is not approved and the Debtors are liquidated today, it is anticipated that there would be no payments beyond payment of allowed administrative claims.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN A DEBTOR ARE ENCOURAGED TO READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

ARTICLE 1

DEFINITIONS, RULES OF
INTERPRETATION, AND COMPUTATION OF TIME

A.      Scope of Definitions

            For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1.B. of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

B.      Definitions

   **1.1. "Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

   **1.2. "Administrative Expense Claim"** or **"Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estates and operating the Debtors' businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estates; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code.

   **1.3. "Allowed"** means with respect to Claims (a) any Claim against a Debtor, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely Filed proof of Claim has been Filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so Filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

   **1.4. "Assets"** means all assets and property of the Estates of the Debtors, regardless of whether reflected in the financial records of the Debtors, including but not limited to: Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Causes of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

5

**1.5.** **"Avoidance Actions"** means the Causes of Action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code.

**1.6.** **"Ballots"** means the ballots accompanying the Plan upon which holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**1.7.** **"Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Commencement Date.

**1.8.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, having jurisdiction over the Chapter 11 Cases or such other court of competent jurisdiction as may have such jurisdiction in the future.

**1.9.** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and (b) the Local Rules of the Bankruptcy Court, in each case, as in effect on the Commencement Date.

**1.10.** **"Beneficiaries"** means Holders of Allowed Claims and Interests that are entitled to receive Distributions under the Plan from the Liquidation Trust.

**1.11.** **"Business Day"** means any day other than: (a) a Saturday, (b) a Sunday, and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.12.** **"Cases"** has the same meaning as the term "Chapter 11 Cases"

**1.13.** **"Cash"** means legal tender of the United States of America.

**1.14.** **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

**1.15.** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or

6

otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Cases, including through the Effective Date, that belong to the Debtors or their Estates. For the avoidance of doubt, "Causes of Action" includes all claims which the Debtors have on behalf of themselves and/or their affiliates against Google LLC and any of its affiliates.

1.16. **"Chapter 11 Cases"** means these chapter 11 cases of Media and Operations pending in the United States Bankruptcy Court for the Southern District of New York and jointly administered as Case No. 18-13243 (JLG).

1.17. **"Claim"** means any claim against a Debtor, regardless of whether asserted and regardless of whether known, as the term "claim" is defined in Section 101(5) of the Bankruptcy Code.

1.18. **"Claims Objection Deadline"** shall have the meaning ascribed to it in Section 8.6. of the Plan.

1.19. **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

1.20. **"Combined Plan and Disclosure Statement"** means this Plan of Liquidation and Disclosure Statement filed pursuant to the Bankruptcy Code with respect to this Plan, including all exhibits, appendices, and schedules thereto, if any, as same may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court.

1.21. **"Commencement Date"** means October 26, 2018, the date on which each Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.

1.22. **"Confirmation Date"** means the date on which the Confirmation Order becomes a Final Order.

1.23. **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

1.24. **"Confirmation Order"** means an order of the Court confirming the Plan under Section 1129 of the Bankruptcy Code that has become a Final Order.

1.25. **"Debtor"** means one of the Debtors, in its individual capacity as a debtor and debtor in possession in its respective Chapter 11 Case.

1.26. **"Debtors"** means collectively Unlockd Media, Inc., and Unlockd Operations US Inc., as debtors and debtors in possession in the Chapter 11 Cases.

**1.27.** **"Disputed Claim"** means a Claim or any portion thereof that is not an Allowed Claim.

**1.28.** **"Disputed Reserve"** means the aggregate amount of Cash that would have been distributed on the Distribution Date, or in subsequent Distributions, to the Holders of Disputed Claims if such Disputed Claims had in fact been Allowed on such date: (a) for liquidated Claims, in the amount asserted in a filed Proof of Claim or Administrative Claim; and (b) for unliquidated Claims, the amount estimated by the Liquidation Trustee as the maximum reasonable amount that could ultimately be allowed by the Court.

**1.29.** **"Distribution"** means a distribution of Cash or other Assets of the Estates made in accordance with the Plan or the Liquidation Trust Agreement.

**1.30.** **"Distribution Date"** means the date on which the Liquidation Trustee shall make a Distribution, which shall be a date or dates selected by the Liquidation Trustee.

**1.31.** **"Effective Date"** means a Business Day selected by the Debtors after which all conditions to the occurrence of the Effective Date set forth in Section 7.1. have been satisfied or duly waived.

**1.32.** **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**1.33.** **"Estates"** means the Debtors' chapter 11 estates, individually or collectively, as is appropriate in context, created by the commencement of and in the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

**1.34.** **"Estate Litigation"** means all proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estates, Liquidation Trust, the Debtors, or by any party on behalf of or for the benefit of the Estates or Liquidation Trust, including, but not limited to, any and all causes of action and claims against Google.

**1.35.** **"Exculpated Claim"** any claim (as defined in Section 101(5) of the Bankruptcy Code) or Cause of Action for any claim related to any act taken or omitted after the Commencement Date and before the Effective Date arising out of the Chapter 11 Cases related to any of the Debtors, including, without limitation, (i) the negotiation of any settlements entered into with or by any of the Debtors or any other estate representatives, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of  this Combined Plan and Disclosure Statement, the Liquidation Trust, or any litigation funding agreement, and/or (iii) any contract, instrument, release or other agreement or document created or entered into in connection with any such negotiations or settlements of the this Combined

Plan and Disclosure Statement, the Liquidation Trust, any litigation funding agreement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, and the administration and implementation of the Plan.

**1.36.** **"Exculpated Party"** shall have the meaning ascribed to it in Section 12.3. of the Plan.

**1.37.** **"Executory Contract"** means a contract or unexpired lease (including amendments thereto) to which a Debtor is a party that is or previously was subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.38.** **"Equity Interest, or Interest"** means the legal, equitable, contractual, and other rights of any Person with respect to existing shares or other equity interest, or any other equity securities of, or ownership interests in, the Debtors.

**1.39.** **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

**1.40.** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, reconsideration, or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, reconsideration, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, reconsideration, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, reconsideration, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.41.** **"General Claims Bar Date"** means September 3, 2019.

**1.42.** **"General Claims Bar Date Order"** means the order entered by the Court on July 16, 2019 ( ECF No. 68), which established the General Claims Bar Date.

**1.43.** **"General Unsecured Claim"** means any Claim against a Debtor that is not (i) a Secured Claim; (ii) entitled to priority under Sections 503 or 507 of the Bankruptcy Code; or (iii) an Administrative Expense Claim, Priority Tax Claim, or a Priority Non-Tax Claim.

**1.44.** **"Google"** means Google, LLC, a limited liability company, and/or any and all of its affiliates.

9

**1.45.** **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

**1.46.** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**1.47.** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code, plus all entities under common control with the Debtors as of the Petition Date.

**1.48.** **"Liabilities"** means the liabilities of the Estates, whether or not reflected in the financial records of the Debtors.

**1.49.** **"Lien"** shall have the meaning ascribed to it in Section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**1.50.** **"Liquidation Trust"** means that Liquidation Trust established pursuant to this Plan in which the Liquidation Trust Assets shall vest as set forth in the Plan on the Effective Date.

**1.51.** **"Liquidation Trust Advisor"** means the advisor created for the Liquidation Trust, as further described in Section 7.4. and shall be Matthew Berriman, the sole director of the Debtors.

**1.52.** **"Liquidation Trust Agreement"** means that certain Liquidation Trust Agreement that governs the operation and management of the Liquidation Trust, a copy of which will be included in the Plan Supplement.

**1.53.** **"Liquidation Trust Assets"** means all of the Assets transferred or granted to the Liquidation Trust, consisting of all of the assets of the Estates, including, without limitation, (i) the Causes of Action and Estate Litigation; (ii) Cash and Cash Equivalents; (iii) the Liquidation Trust Proceeds, and (iv) all other Assets of the Estates.

**1.54.** **"Liquidation Trust Expenses"** means any expenses incurred by the Liquidation Trust, including, but not limited to, the cost of any litigation funding in accordance with its terms, professional fees and expenses of the Liquidation Trust (including, without limitation, any contingency counsel fees), the fees and expenses of the Liquidation Trustee, fees and expenses incurred by any Entity retained by the Liquidation Trustee, the fees and expenses of the Liquidation Trust Advisor, the fees and expenses of all experts, witnesses, and personnel of the Debtors utilized in connection with Liquidation Trust activities, and the fees and expenses of any actions taken or professionals utilized in the monetization of the Liquidation Trust Assets.

1.55. **"Liquidation Trust Proceeds"** means the proceeds from the collection, liquidation, sale or other disposition of the Debtors' Assets as of the Effective Date, including the proceeds received from any Causes of Action, Estate Litigation, or sale of the Liquidation Trust Assets.

1.56. "**Liquidation Trust Recoveries**" means all the gross recoveries of the Liquidation Trust, including the Liquidation Trust Proceeds, prior to the payment of the Liquidation Trust Expenses and Administrative Expenses.

1.57. **"Liquidation Trustee"** means the Person vested with the authority under the Liquidation Trust to administer the Liquidation Trust, as further described in Section 7.4. of this Plan. The initial Liquidation Trustee shall be Peter Kaufman of Gordian Group. Any replacements of the Liquidation Trustee must be approved by the Liquidation Trust Advisor.

1.58. **"Media"** means Unlockd Media, Inc., one of the debtors and debtors-in-possession in these Chapter 11 Cases.

1.59. **"Net Recoveries"** means the Liquidation Trust Recoveries, including the Liquidation Trust Proceeds, net of all Liquidation Trust Expenses and all Administrative Expenses carried over to the Liquidation Trust from the Chapter 11 Cases, the latter with 4% interest from the Effective Date.

1.60. **"Operations"** means Unlockd Operations US Inc., one of the debtors and debtors-in-possession in these Chapter 11 Cases.

1.61. **"Person"** means a person as defined in section 101(41) of the Bankruptcy Code.

1.62. **"Petition Date"** means October 26, 2018, the date these Chapter 11 Cases were commenced.

1.63. **"Plan"** means this plan of liquidation under chapter 11 of the Bankruptcy Code as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

1.64. **"Plan Proponents"** means the Debtors.

1.65. **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least seven (7) calendar days before the Confirmation Hearing, and any additional documents or schedules Filed before the Effective Date as supplements or amendments to the Plan Supplement, including, without limitation, the Liquidation Trust Agreement. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**1.66.** **"Prepetition Obligations"** means all of Debtors' obligations, indebtedness, and liabilities arising prior to or existing as of the Petition Date.

**1.67.** **"Priority Non-Tax Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.68.** **"Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.69.** **"Professional"** means any person or Entity employed by the Debtors in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code. When not capitalized, the term "professional" may refer to professionals retained by the Liquidation Trust or another Entity.

**1.70.** **"Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**1.71.** **"Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

**1.72.** **"Pro Rata"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class. Until all Disputed Claims are Resolved, Disputed Claims shall be treated as Allowed Claims in the amount used for calculation of the Disputed Reserve for the purpose of calculating Pro Rata Distributions of the Assets.

**1.73.** **"Proof of Claim"** means a Claim Filed against a Debtor in any of the Chapter 11 Cases.

**1.74.** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims.

**1.75.** **"Rejected Contract"** means an Executory Contract deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**1.76.** **"Rejection Claim"** means any Claim arising from a Rejected Contract, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with Section 502(b)(6) of the Bankruptcy Code, or (b) an employee for damages

resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with § 502(b)(7). A Rejection Claim shall constitute a General Unsecured Claim.

1.77. **"Rejection Claims Bar Date"** means the deadline to File a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

1.78. **"Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

1.79. **"Reserved Funds"** means any Net Recoveries that would otherwise be available to Trust Beneficiaries that the Liquidation Trustee elects to reserve to fund the pursuit of specific Causes of Action and Liquidation Trust administrative expenses.

1.80. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, and as such schedules and statements have been or may be supplemented or amended from time to time.

1.81. **"Secured Claim"** means an Allowed Claim that is secured by a Lien (which is valid, perfected and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

1.82. "**Trust Beneficiaries"** means all Holders of Allowed Claims and Interests against the Debtors.

1.83. **"Trust Waterfall"** means the priority of payments to be made by the Liquidation Trust to Holders of Allowed Claims and Interests from the proceeds of the Net Recoveries after the payment of all Liquidation Trust Expenses and Administrative Claims carried over from the Chapter 11, to the extent funds are available, as follows: First, to the Pro Rata payment of all Allowed Priority Tax Claims in full, without interest; Second, to the Pro Rata payment of all Allowed Priority Non-tax Claims in full, without interest; Third, to the Pro Rata payment of all Allowed General Unsecured Non-Insider Claims, without interest; Fourth, to the Pro Rata payment of all Allowed General Unsecured Insider Claims, without

13

interest; and <u>Fifth</u>, the remainder, if any, Pro Rata to the Holders of Allowed Equity interests in the Debtors.

**1.84.** **"Unclaimed Property"** means any Distributions that are returned to the Liquidation Trustee or Liquidation Trust as: (i) undeliverable to a Beneficiary, or (ii) unclaimed by a Beneficiary, as further described in Section 8.2.

**1.85.** **"Unimpaired"** means an Allowed Claim or Equity Interest that is not "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

**1.86.** **"United States Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the Southern District of New York.

**1.87.** **"United States Trustee Fees"** means all fees payable on or before the Effective Date to the United States Trustee, including pursuant to 28 U.S.C. § 1980, together with interest, if any, pursuant to 31 U.S.C. § 3717.

**1.88.** **"Unlockd"** means Unlockd Limited f/k/a Unlockd Media Pty. Ltd., the Australian parent company of the Debtors, currently in administration.


## C.    Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

**D.     Computation of Time.**

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE 2

## BACKGROUND OF THE DEBTORS

### 2.1.  Filing of The Debtors' Chapter 11 Cases.

On October 26, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The cases are jointly administered and pending in the United States Bankruptcy Court for the Southern District of New York as Case No. 18-13243 (JLG).

### 2.2. History and Nature of the Debtors' Business.

The Debtors are the American subsidiaries of an Australian company, currently in administration, Unlockd.  Unlockd was conceived in 2014 as a revolutionary media, technology and telecommunications business that benefits consumers, advertisers, and communication companies. Unlockd developed a unique app for Android mobile phones that offers users who sign up for the service relevant advertising, content or other offers based upon their demographics and stated preferences upon their unlocking their Android smartphone. It allows users who agree to such service to collect points which they can then redeem for things like mobile phone credits, mobile data credits, premium entertainment content or loyalty points. The users of the Unlockd app benefited from accumulating points which they could redeem for items they desired. Unlockd's telecom partners benefited from improved customer retention and acquisition as a consequence of the points program. And finally, Unlockd's major advertising partners received first access to consumers at their most engaged digital moment, the moment of unlocking their mobile phone.

In order for the business plan to work, Unlockd had to operate through a mobile advertising platform and app store. Although Unlockd has utilized various platforms, most of its content utilizes Google Play Store and Google's advertising platform, AdMob. Access to Google Play Store and AdMob were critical to Unlockd's business plan; as, they dominate the marketplace for Android apps and advertising intermediation services.

In 2015, Unlockd set up two US subsidiaries, Media and Operations, of which it was the sole shareholder. Both were Delaware corporations with their offices in New York City.

15

All funding for these two Debtors came from the parent company. Operations was conceived as the operating company. All employees, payroll, leases, and day-to-day operating issues were handled at the Operations level. Media was conceived as the contracting party which went out and secured advertising partners, entered into contracts, and collected all revenues. Media then funded Operations from the revenues it collected. Accordingly, while the Debtors have intercompany debt, they have no Secured debt.

Unlockd's first product launch was in the United States through the Debtors. The first use of its app was in partnership with Sprint's Boost mobile. The app was customized for Sprint and offered on the Google Play Store. It was almost immediately successful.

### 2.3. Legal Structure and Ownership.

Both of the Debtors are Delaware corporations. As of the Petition Date, they were both wholly-owned subsidiaries of Unlockd, an Australian corporation. Unlockd itself is in administration, the Australian equivalent of bankruptcy proceedings. Unlockd may seek to sell its shares in the Debtors as part of the administration proceedings.

### 2.4. Debtors' Assets.

The Debtors had liquidated all of their physical assets prior to filing the Chapter 11 Cases. Today, the Debtors have cash on hand of approximately $240,000, most of which is earmarked for Professional Fees. Their only other asset consists of Causes of Action, particularly against Google. Other than these Causes of Action, the Debtors have no significant assets. Absent a recovery on the Causes of Action, there are virtually no assets to be distributed to Holders of Allowed Claims. The purpose of this Plan is to give Debtors the opportunity to pursue the Causes of Action in order to provide a distribution to creditors and Interest Holders.

### 2.5. Debtors' Liabilities.

There are no known Secured Claims against the Debtors.

Media scheduled $5,618,377.30 of General Unsecured Claims. Additional claims were filed prior to the General Claims Bar Date bringing the total amount of General Unsecured Claims against Media to $6,084,661.80. Of this amount, $1,977,161.80 are General Unsecured Non-Insider Claims. $4,107,500 are General Unsecured Insider Claims. Certain of the General Unsecured Non-Insider Claims have asserted that they are Priority Tax Claims. Media intends to dispute this classification.

Operations scheduled $5,489,341.49 of General Unsecured Claims. Proofs of Claim were filed prior to the General Claims Bar Date which actually reduced the General Unsecured Claims, such that, the total amount outstanding of General Unsecured Claims today is $5,465,018.06. Of this amount, $223,446.61 are General Unsecured Non-Insider Claims. $5,241,571.44 are General Unsecured Insider Claims. Certain of the General Unsecured

Non-Insider Claims have asserted that they are Priority Tax Claims. Operations intends to dispute this classification.

The Debtors intend to object to approximately $300,000 of the General Unsecured Claims, and reserve the right to object to any Claims.

As discussed elsewhere in the Plan, since all of the revenue came into Media, and all the expenses were paid by Operations with loans from Media, the Debtors are proposing to substantively consolidate the Debtors into one Entity, such that, all intercompany Claims are eliminated. This would eliminate $3,171,476 of intercompany debt which Operations owes to Media.

In addition to the above claims, the Debtors believe that there are approximately $230,000 of Administrative Claims for Professional Fees, most of which have not yet been presented to the Court for Allowance.

### 2.6. Events Leading to the Filing of the Chapter 11 Cases.

As Debtors and their related companies were expanding rapidly across the globe to great consumer, advertiser and investor interest, the management of Unlockd determined to do a public offering on the Australian exchange in early 2018. This would allow the parent company to get a massive capital infusion, which in turn would allow it to inject capital into the Debtors and other affiliates, so that they could grow. The Debtors were just about to launch a new customized app with Lycamobile in April 2018, and had just launched a new product for Sprint. They would need continued capital infusion from their parent to realize on these opportunities.

There was great investor interest concerning the proposed public offering, and it was hyped by some financial pundits as potentially the most successful technology start up in the recent history of Australia. The future indeed looked rosy for both Unlockd and the Debtors, when suddenly Google made a public announcement that it was removing the Unlockd app from the Google Play Store and from the AdMob advertising network, including the customized Sprint Boost app which was the majority of the Debtors' business. The Debtors simply cannot function without access to Google Play Store and the AdMob advertising network. Their app works only on Android mobile devices, and the Google Play Store is the only app store preinstalled on all Android devices. Mobile device users would need to disable certain features on their mobile devices, including safety safeguards, in order to download the Unlockd app from another source. Therefore, without access to Google Play Store and AdMob, the Debtors literally could not survive.

Google claimed that the Unlockd apps violated the terms of use of the Google Play Store and AdMob advertising marketplace. However on three occasions prior to the announcement, Google vetted the Unlockd app and determined that it did comply. Unlockd has publicly taken the position that Google's contention that the Unlockd app violated Google policies is not true, and that Google is merely trying to bury a potential advertising giant and

17

competitor, in violation of various laws concerning competition and trade monopolies, including, US antitrust law.

Not being able to reach a compromise with Google, Unlockd took Google to court in both Australia and Great Britain seeking to enjoin Google from removing the Unlockd apps from the Google platforms. Unlockd was successful in both countries, and Google was enjoined from removing the apps; however, lengthy lawsuits against Google lay ahead to see if its destructive behavior could be permanently enjoined, and what damages would be due to the Unlockd family of companies. Despite the success of the Australian and British entities in obtaining injunctive relief, the bloom was off the rose. With Unlockd's future in question because of Google, the market quickly lost interest in Unlockd's stock offering, and it had to be pulled. With no new infusion of capital, Unlockd found it difficult to finance its growing business, search for an alternative to Google if one existed, and finance its lawsuits against Google, all at the same time. In addition, the confidence of its trading partners eroded; as, the future looked uncertain if Unlockd could not be assured access to the Google Play Store and AdMob. As a consequence, on June 12, 2018, the parent company, Unlockd, entered into insolvency proceedings in Australia known as and administration. This is similar to Chapter 11, but requires an independent third-party step in to administer the company.

After the administration was filed, the administrators search for either an equity infusion or a buyer for Unlockd, but the uncertainties surrounding the Google situation made it impossible to interest anyone in investing in or buying the company. As the Australian parent, which previously had provided funding to its subsidiaries, continued to weaken with no capital infusion in sight, the British subsidiaries began to struggle, as well. At the end of August, 2018, the two British subsidiaries, Unlockd Media Technology, Ltd., and Unlockd Media Operations, Ltd., had to file for administration, as well, in Great Britain. These companies had also previously helped to fund the Debtors.

All of this had a domino effect on the Debtors. Many of their resources came from the parent company and its affiliates, including the fact that most of Debtors' officers were on the Unlockd payroll. Without the support from the parent company, it could no longer sustain operations. In September 2018, the contract with Sprint's Boost, Media's largest trading partner, was terminated. As the Debtors were still in startup mode and had not yet shown a net operating profit, and having lost their trading partner, they could not continue to operate on a day-to-day basis without the support of their affiliates. As a consequence, the Debtors filed for protection under Chapter 11 on October 26, 2018, in order to preserve their only significant asset: causes of action against Google.

## 2.7. Significant Events During the Chapter 11 Cases.

At the outset of the Chapter 11 Cases, Mayerson & Hartheimer, PLLC, was approved by the Court as counsel to the Debtors, and Vernon Consulting, Inc., was approved by the Court as financial advisor to the Debtors. Since being retained, they have worked to collect receivables and reduce liabilities. Their efforts have resulted in significant tax abatements, and a

settlement with Silicon Valley Bank which released a cash collateral account, returning approximately $25,000 in funds to Operation's Estate.

The Professionals have spent significant time exploring, reviewing and understanding Causes of Action which the Debtors may have against Google, and have used this knowledge to try to attract antitrust experts and litigation funders to the case. Recently, the Debtors announced that they have retained the services of an outstanding antitrust expert to pursue causes of action against Google, which fact makes this plan feasible.

### 2.8. Projected Recovery of Avoidable Transfers.

The Debtors are unaware of any significant avoidable transfers. As a consequence, the Debtors do not currently intend to pursue preference, fraudulent conveyance, or other avoidance actions. The right to do so, however, is reserved to the Liquidation Trustee.

# ARTICLE 3

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article 4 hereof. These unclassified Claims are treated as follows:

### 3.1. Administrative Expense Claims

(a)    **Administrative Expenses**. Each Holder of an Allowed Administrative Expense Claim other than Professional Fee Claims and United States Trustee Fees will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter ; (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter.

The Debtors do not believe that there are any Administrative Expense Claims against the Debtors other than Professional Fee Claims and United States Trustee Fees referred to below.

(b)    **Statutory Fees**. All fees of the Debtors payable pursuant to Section 1930 of title 28 of the United States Code shall be paid (i) if due and owing, on or prior to the Effective Date by the Debtors, and (ii) if due and owing after the Effective Date, as and when due from the proceeds of the Liquidation Trust.

The Debtors are current on their United States Trustee Fees, and the Plan provides that an amount will be set aside in the Liquidation Trust for ongoing payment of United States Trustee Fees.

(c)      **Professional Fee Claims**. Each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a fee application has been properly and timely filed pursuant to this Article 3 shall be treated and paid only to the extent allowed by a Final Order. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Chapter 11 Cases has not been approved by the Bankruptcy Court. To the extent a Professional Fee Claim is not paid in full upon the Effective Date, each Professional retained in the Chapter 11 Cases has agreed to payment on account of such Claim after the Effective Date from the Liquidation Trust Recoveries as soon as the Liquidation Trustee deems sufficient Liquidation Trust Proceeds available for such purpose, together with 4% interest from the Effective Date on non-contingency fees. Any professional fees and reimbursements or expenses incurred by the Liquidation Trust subsequent to the Effective Date may be paid without application to the Bankruptcy Court and subject to the approval of the Liquidation Trustee, and may include bonuses as approved by the Liquidation Trustee and Liquidation Trust Advisor. These post-Effective Date fees and expenses will be paid by the Liquidation Trust.

The Debtors estimate that there will be approximately $230,000 in Professional Fee Claims by the Effective Date, and that there will be sufficient cash to pay these in full.

(d)      **Administrative Expense Bar Date**. Requests for payment of Administrative Expense Claims must be filed by the Administrative Expense Bar Date. Holders of Administrative Expense Claims that do not File such requests by the Administrative Expense Bar Date shall be forever barred from asserting such Administrative Expenses against the Debtors or the Liquidation Trust or any of their Assets.

### 3.2. Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Priority Tax Claim shall be entitled to its *Pro Rata* share of Cash from the Liquidation Trust, subject to the Trust Waterfall.

Approximately $3550 in Claims have been filed as Priority Tax Claims. The Debtors intend to dispute this classification and believe such Claims are properly General Unsecured Non-Insider Claims.

# ARTICLE 4

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1.    General

Pursuant to section 1122 of the Bankruptcy Code, set forth

below is a designation of classes of Claims against and Equity Interests in the Debtors. There has been no differentiation between Claims and Equity Interests in the two Debtors, as, it is anticipated that the Debtors will be substantively consolidated upon Confirmation. See Article 7 below. A Claim or Equity Interest is placed in a particular Class for the purposes of voting on this Plan and/or receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Equity Interest in that Class, and such Claim or Equity Interest has not been paid, released, or otherwise settled prior to the Distribution Date for such Claim or Equity Interest.  In accordance with section 1123 (a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims of the kinds specified in sections 507 (a)(1) and 507(a)(8) of the Bankruptcy Code, respectively, have not been classified, and their treatment is set forth in Article 3 above.

The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan are as follows:

| Class | Proposed Recovery | Claims/Interests | Status | Entitled to Vote |
|---|---|---|---|---|
| 1 | Contingent; Paid in Full | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Contingent | General Unsecured Non-Insider Claims | Impaired | Yes |
| 3 | Contingent | General Unsecured Insider Claims | Impaired | Yes |
| 4 | Contingent | Equity Interest | Impaired | Yes |

There have been no Secured Claims scheduled or Filed against the Debtors, so, no provision has been made for Secured Claims.

# ARTICLE 5

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS
## UNDER THE PLAN

The following treatment set forth in this Article 5 shall be accorded to Allowed Claims against the Debtors and Interests in the Debtors:

### 5.1. Class 1:   Priority Non-Tax Claims

Class 1 consists of Allowed Priority Non-Tax Claims held against Debtors. On the Distribution Date, unless otherwise agreed by a Holder of a Priority Non-Tax Claim, each Holder of a Priority Non-Tax Claim shall be entitled to receive its Pro Rata share in Cash from the Liquidation Trust Recoveries, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims and Priority Tax Claims entitled to greater priority than an Allowed Priority Claim have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve. It is anticipated that the Liquidation Trust Assets will be sufficient to pay Class 1 Allowed Claims in full.  No payments will be made to Class 2 until the Class 1 Allowed Claims have been paid in full (or reserved for), without interest.

The Debtors do not believe that there are any Priority Non-Tax Claims against the Debtors.

### 5.2.  Class 2:   General Unsecured Non-Insider Claims

Class 2 consists of Allowed General Unsecured Non-Insider Claims. Unless otherwise agreed by a Holder of an Allowed General Unsecured Non-Insider Claim, each holder of an Allowed General Unsecured Non-Insider Claim shall be entitled to receive its Pro Rata share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims entitled to greater priority than an Allowed General Unsecured Non-Insider Claim have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve.  Pursuant to the Trust Waterfall, no payments will be made to Class 3 until the Class 2 Allowed Claims have been paid in full (or reserved for), without interest.

The Debtors estimate that in a substantively consolidated Entity, there will be approximately $1,900,600 of Allowed Unsecured Non-Insider Claims. Currently, there is approximately $2,200,600 of General Unsecured Non-Insider Claims scheduled or Filed against the Debtors. There is no way to estimate the payment on such Claims, as, it will depend entirely on the Liquidation Trust Recoveries.

### 5.3. Class 3:   General Unsecured Insider Claims

Class 3 consists of Allowed General Unsecured Insider Claims.  Unless otherwise agreed by a Holder of an Allowed General Unsecured Insider Claim, each Holder of an Allowed General Unsecured Insider Claim shall be entitled to receive its Pro Rata share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims, Priority Tax Claims, Priority Non-tax Claims, and General Unsecured Non-Insider Claims entitled to greater priority than an Allowed General Unsecured Insider Claim have been paid in full, or, to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve. Pursuant to the Trust Waterfall, no payments will be made to Class 4 until the Class 3 Allowed Claims have been paid in full (or reserved for), without interest.

The Debtors estimate that in a substantively consolidated Entity, the Allowed General Unsecured Insider Claims will be approximately $6,175,000. Currently, there is approximately $9,350,000 of General Unsecured Insider Claims scheduled or Filed against the Debtors. There is no way to estimate the payment on such Claims, as, it will depend entirely on the Liquidation Trust Recoveries.

### 5.4. Class 4: Equity Interests

Class 4 consists of the Equity Interests in the Debtors (without differentiation as to which Debtor). Unless otherwise agreed by a Holder of an Allowed Equity Interest, each Holder of an Allowed Equity Interest shall be entitled to receive its Pro Rata share in Cash of all the remaining Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement; provided, that the Liquidation Trust Expenses and the face amount of all Administrative  Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, General Unsecured Non-Insider Claims, and General Unsecured Insider Claims entitled to greater priority than an Allowed Equity Interest have been paid in full, or, to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve. On the first Distribution Date, all Class 4 Equity Interests shall be cancelled, extinguished, and of no further force and effect. The Liquidation Trustee may reserve such monies as he sees fit for payment of Liquidation Trust Expenses from the initial distribution to Class 4. Upon payment of all the Liquidation Trust Expenses, any amounts remaining in such reserve will be distributed Pro Rata to the Holders of Class 4 Equity Interests.

# ARTICLE 6

## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1. Voting Classes

Classes 1 through 4 are Impaired under the Plan. The Holders of Classes 1 through 4 Allowed Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

### 6.2. Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

# ARTICLE 7

## MEANS OF IMPLEMENTATION OF THE PLAN

### 7.1. Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Plan Proponents:

a.  Entry of the Confirmation Order and the Confirmation Order having become a Final Order.

b.  No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Court shall be pending.

c.  The Liquidation Trust Agreement shall have been executed and the Liquidation Trust shall have been established.

d.  The Liquidation Trustee and the Liquidation Trust Advisor shall be authorized to assume the rights and responsibilities provided in the Plan and the Liquidation Trust Agreement.

e.  The Debtor shall have been substantively consolidated pursuant to the Confirmation Order.

### 7.2. Vesting of Assets of the Estate

On the Effective Date, subject only to the terms of this Plan, all Assets of the Debtors and the Estates, wherever situated, shall vest in the Liquidation Trust, free and clear of all Liens, Claims, encumbrances, and interests except as otherwise provided in the Plan.

24

**7.3. Substantive Consolidation**

The Plan constitutes the Plan Proponents' requests that the Bankruptcy Court authorize and approve substantive consolidation of the Debtors. The Debtors operated one business for which all of the expenses were paid by Operations, but all of the income went into Media. Thus, the Debtors represented two sides of the balance sheet for one business. Since Operations had no income, it received funding to pay expenses by borrowing money from Media, the result of which is that it built up an intercompany indebtedness to Media of $3,171,476, all of which was used to pay expenses which benefited Media. Accordingly, the Plan Proponents submit that the fairest way of looking at the assets and liabilities of the Debtors is to substantively consolidate them, such that, the intercompany indebtedness is eliminated, and all of the assets and all of the liabilities are treated as the assets and liabilities of one Entity. The Plan Proponents believe that not only does this give a true picture of the assets and the liabilities of the Debtors, but also that substantive consolidation is in the best interests of all creditors of both Debtors.

**7.4. Liquidation Trust**

a. <u>Execution of the Liquidation Trust Agreement</u>. On or before the Effective Date, the Liquidation Trustee and the Debtors on behalf of themselves and the Estates, will execute the Liquidation Trust Agreement, a copy of which will be included in the Plan Supplement.

b. <u>Appointment of Liquidation Trustee</u>. Peter Kaufman of Gordian Group shall be appointed as the initial Liquidation Trustee. The Liquidation Trustee shall have the powers, duties, and obligations set forth in this Plan and in the Liquidation Trust Agreement. After the Effective Date, all actions required of and/or otherwise specified herein to be performed by the Debtors shall be performed by the Liquidation Trustee, or its designee, in the name of, and on behalf of, the Debtors and the Estates. The Liquidation Trustee shall be authorized to execute documents on behalf of the Debtors and the Estates. If, for any reason, Peter Kaufman is unwilling or unable to continue to serve as the Liquidation Trustee, the Liquidation Trust Advisor shall appoint a replacement trustee.

c. <u>Duties and Responsibilities of Liquidation Trustee</u>. The Liquidation Trustee shall owe a fiduciary duty to the Beneficiaries of the Liquidation Trust. The Liquidation Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors may have to any attorney-client privilege, the work product doctrine, or any other privilege, and the Liquidation Trustee shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege. These duties, responsibilities and obligations include, but are not limited to, the following:

1. Receive, manage, invest, supervise and protect the Liquidation Trust Assets;

2. Borrow money on a non-recourse basis and enter into agreements with litigation funders;

25

3.      Pay taxes or other obligations incurred by the Liquidation Trust;

4.      Prepare and file tax returns on behalf of the Debtors, the Estates, and the Liquidation Trust, including the right to request a determination of tax liability as set forth in section 505 of the Bankruptcy Code;

5.      Request and require as a condition to receiving a distribution under the Plan W-9 federal tax forms for any party who is entitled to receive distributions on account of a Claim or Equity Interest;

6.      Prosecute and resolve Causes of Action, if any, including abandoning Causes of Action as he sees fit;

7.      Pay all United States Trustee fees;

8.      In lieu of Monthly Operating Reports, file status reports with the Court and the US Trustee every 120 days, including a summary of any disbursements and receipts;

9.      Adhere to any duty of care, loyalty or other duty imposed or imputed by law;

10.     Respond to inquiries of creditors;

11.     Collect and liquidate the Liquidation Trust Assets;

12.     Consult the Liquidation Trust Advisor on strategic litigation decisions and all significant decisions concerning the Liquidation Trust Assets;

13.     Employ professionals, experts, witnesses, and personnel as he sees fit to carry out the purposes of the Liquidation Trust, including, without limitation, employees and members of Gordian Group and professionals who represented the Debtors in the Chapter 11 Cases;

14.     Determine one or more Distribution Dates with respect to the Liquidation Trust Recoveries; and

15.     Determine the timing and implementation of the winding up of the Liquidation Trust.

d.   Trust Funding.   On the Effective Date, all of the Assets of the Debtor will vest in the Liquidation Trust. The Liquidation Trustee may use such funds to pay Administrative Expenses and Priority Tax Claims, as well as Litigation Trust Expenses; provided, however, that he maintain a fund at the outset of $15,000 for the payment of statutory fees pursuant to Section 1930 of Title 28 of the United States Code and other urgent expenses, which may include filing fees. To the extent that the Allowed Administrative Expenses exceed the Cash vested in the

Liquidation Trust on the Effective Date, the Holders of Allowed Administrative Expenses will be paid their pro rata amount of cash on hand, less the $15,000 expense fund. The remainder will be paid from Litigation Trust Recoveries and/or any borrowings made by the Liquidation Trustee with 4% interest from the Effective Date in accordance with Article 2 of this Plan. The Liquidation Trustee shall use all Liquidation Trust Recoveries to pay Liquidation Trust Expenses and the Unclassified Claims set forth in Article 2 ahead of any payments under the Trust Waterfall. To the extent that further Trust Funding is necessary, the Liquidation Trustee, with the advice of the Liquidation Trust Advisor, is authorized to borrow money on a non-recourse basis and enter into such litigation financing arrangements as he shall see fit.

e.     Preservation of Causes of Action.   Except as expressly provided in the Plan, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Liquidation Trust shall exclusively retain and may enforce, as the representative of the Estates under section 1123(b)(3)(B), and the Debtors expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any claims, demands, rights, and Causes of Action that the Debtors or the Estates may hold against any Person or Entity, including Avoidance Actions, which shall vest in the Liquidation Trust. Accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of, or in connection with, the Confirmation, consummation, or effectiveness of this Plan. The Liquidation Trustee or its successors or assigns exclusively may pursue such retained claims, demands, rights, and Causes of Action.

f.   Reservation of Rights.     With respect to any Avoidance Action that the Liquidation Trustee abandons, the Liquidation Trustee reserves all rights, including the right under section 502(d) of the Bankruptcy Code to use defensively the abandoned Avoidance Claim as a basis to object to all or any part of a Claim against the Estate asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer.

g.   The Liquidation Trust Advisor.   On the Effective Date, the Liquidation Trust Advisor shall be deemed appointed pursuant to the Liquidation Trust Agreement. The initial Liquidation Trust Advisor shall be Matthew Berriman, the sole director of the Debtors. Should Matthew Berriman become unwilling or unable to continue to serve as Liquidation Trust Advisor, a successor Liquidation Trust Advisor shall be appointed by a majority vote of the Holders of Allowed Equity Interests. The Liquidation Trust Advisor shall owe a fiduciary duty to the Beneficiaries of the Liquidation Trust. Together with the Liquidation Trustee, recognizing their common interest, the Liquidation Trust Advisor, on matters in which he is consulted, shall stand in the same position as the Debtors and shall benefit from any attorney-client privilege, work product doctrine, or any other privilege that the Debtors would have had available to them. The Liquidation Trust Advisor is not required to get separate counsel from the Liquidation Trustee.

h.   Authority of the Liquidation Trust Advisor. The Liquidation Trustee shall report all material matters to and seek advice for all material decisions from the Liquidation Trust Advisor. The Liquidation Trust Advisor may authorize the Liquidation Trust to invest its corpus in prudent investments other than those described in Bankruptcy Code Section 345 of the Bankruptcy Code, and may require a fidelity bond from the Liquidation Trustee in a reasonable amount. At all times, with respect to major strategic decisions on litigation as well as matters of material interest to the Liquidation Trust, the Liquidation Trustee shall seek the advice of the Liquidation Trust Advisor and endeavor to reach consensus; however, in the event there is not consensus, the Liquidation Trustee has the final authority to act on behalf of the Liquidation Trust. The Liquidation Trust Advisor shall have the right at any time, solely for cause, to remove the Liquidation Trustee and appoint a successor Liquidation Trustee. Cause must be established to the satisfaction of the Bankruptcy Court at a hearing upon notice for that purpose. The term "cause" shall mean (a) the Liquidation Trustee's gross negligence or failure to perform his duties under the Liquidation Trust Agreement, (b) the Liquidation Trustee's misappropriation or embezzlement of any assets belonging to the Liquidation Trust or proceeds therefrom, or (c) a physical or mental disability which prevents the Liquidation Trustee from performing his required tasks.

i.   Retention of Professionals. The Liquidation Trust, through the Liquidation Trustee, may, subject to the advice of the Liquidation Trust Advisor, retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as he shall consider advisable without necessity of approval of the Court, including the retention of his own firm, Gordian Group, at their customary rates. Persons who served as Professionals in the Chapter 11 Cases prior to the Effective Date may act as Liquidation Trustee (if a successor is appointed) or may be retained by the Liquidation Trustee as his professionals.  The Liquidation Trustee may pay professionals in the ordinary course from amounts held in the Liquidation Trust or from Liquidation Trust Recoveries. The Liquidation Trustee, with the advice of the Liquidation Trust Advisor, may enter into any fee arrangements he feels are appropriate for professionals, including, without limitation, contingency fee arrangements and bonuses.

j.   Compensation.  The Liquidation Trustee will receive the compensation set forth in the Liquidation Trust Agreement, which shall be the fees set forth in Bankruptcy Code Section 326(a) with respect to all monies disbursed by the Liquidation Trust, plus reimbursement of all reasonable expenses. This compensation is separate and apart from any fees due to Gordian Group for any services rendered to the Liquidation Trust. In recognition that the Liquidation Trustee usually receives a monthly fee, which he has waived in this case, and that payment of fees is contingent upon there being Liquidation Trust Recoveries, if the Liquidation Trust enters into a litigation funding agreement, the Liquidation Trustee will be entitled to a one time, nonrefundable payment of  $150,000 from the proceeds of the litigation funding in addition to any other compensation.

k.   Exculpation and Indemnification. Neither the Liquidation Trustee, nor the firms or companies representing him, nor any of their employees, professionals or agents, shall in any way be liable for any acts of any of their employees, professionals or agents, except for acts undertaken in bad faith, gross negligence or willful misconduct, in the performance of their

respective duties. The Liquidation Trustee and its employees, professionals, and agents shall be indemnified by the Liquidation Trust as and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them under this Plan and/or the Liquidation Trust Agreement, except for acts undertaken in bad faith, with gross negligence or willful misconduct.

l.    Investing by the Liquidation Trustee. The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) (i) as permitted by Bankruptcy Code Section 345, and (ii) in other prudent investments as authorized by the Liquidation Trust Advisor; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities. The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3).

m.    Costs and Expenses of the Liquidation Trust. All Liquidation Trust Expenses shall be the sole responsibility of and paid exclusively from the Liquidation Trust.  The Liquidation Trustee shall have no personal obligation for Liquidation Trust Expenses.  The Liquidation Trust is the successor to the Debtors' rights to books and records.

n.    Federal Income Tax Treatment of the Liquidation Trust.    For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that the Liquidation Trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

***Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or financial advisors.***

o.    Sale of Assets Free and Clear. Any Liquidation Trust Asset may be sold by the Liquidation Trustee, by auction, private sale or otherwise pursuant to Section 363 of the Bankruptcy Code without further order of the Bankruptcy Court and the Confirmation Order shall constitute authorization for the Liquidation Trustee to consummate such sales and shall be binding on all parties-in-interest. Any sale of such assets shall be free and clear of all Claims, Liens, encumbrances, and interests with any such Claims, Liens, encumbrances, and interests attaching to proceeds of such sale.

## 7.5. Nonconsensual Confirmation

If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to amend the Plan or undertake to have the Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both. With respect to any Impaired classes of Claims that are

deemed to reject the Plan, the Plan Proponents may request the Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

### 7.6. Closing of Chapter 11 Cases

When each Disputed Claim filed against the Debtors has become an Allowed Claim or a disallowed Claim, and all Cash has been distributed in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules and to request the Bankruptcy Court to enter the Final Decree.

### 7.7. Dissolution of the Debtors and Resignation of its Directors

From and after the first Distribution Date, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Liquidation Trustee on behalf of the Debtors may, but is not required to, file with the appropriate governmental authority or authorities a certificate or statement of dissolution referencing the Plan and any and all required tax returns or other documents required by this Plan or applicable law. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, to withdraw its business operations from any states in which the Debtors were previously conducting business. Upon the Effective Date, all of the Debtors' directors shall be deemed to have been terminated by the Debtors without the necessity of any further action or writing, and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date to the Debtors or its creditors under the Plan, the Liquidation Trust Agreement, or applicable law.

## ARTICLE 8

## DISTRIBUTIONS

### 8.1.    Payment Up to Allowed Claim

Except as otherwise specifically provided in the Plan, no Holder of a Claim shall be entitled to receive Distributions aggregating more than its Allowed Claim, nor shall any Holder of a Claim receive any Distributions under the Plan until its Claim has been Allowed.

### 8.2.    Distributions

Distributions to Holders of Allowed Claims shall be made by the Liquidation Trustee: (a) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee after the date of any related Proof of Claim, or (c) at the addresses reflected on the Schedules if no Proof of Claim has been filed, and the

Debtors or the Liquidation Trustee have not received a written notice of a change of address. If any Distribution of a Holder of an Allowed Claim is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtors or the Liquidation Trustee are notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Any undeliverable distribution made shall be held for redistribution under this Plan. All Claims for undeliverable Distributions must be made no later than 90 days after the Distribution is made, after which date all Unclaimed Property and uncashed checks for any reason shall revert to the Liquidation Trust free of any restrictions thereon, and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors or the Liquidation Trustee or any professional retained by the foregoing to attempt to locate any Holder of an Allowed Claim.

### 8.3. Time of Payment

Except as may be provided herein, all Distributions provided for by the Plan will be made as soon as it is feasible in the reasonable discretion of the Debtors or the Liquidation Trustee, as the case may be. One or more Distributions may be made pursuant to the provisions of the Plan.

### 8.4. Disputed Claims Reserves

On any date that Distributions are to be made on account of Allowed Claims and after making all Distributions to be made on any such date under the Plan, the Liquidation Trustee shall make a reasonable reserve on account of Disputed Claims and shall adjust the reserve periodically, which shall be no less than the amount of the Disputed Claims multiplied by the Pro Rata Distribution that have been made on account of Allowed Claims as of such date. Such Disputed Claim reserve shall be administered by the Liquidation Trustee. The reserve shall be closed and extinguished by the Liquidation Trustee upon the determination that all Distributions and other dispositions of Cash, or other Distributions required to be made under the Plan have been made in accordance with the terms of the Plan, and all Claims have either been Allowed, Disallowed, or withdrawn. Upon closure of a Disputed Claim reserve, all Cash shall be subject to redistribution, in accordance with the provisions of the Plan.

### 8.5. Estimation of Claims

The Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claims, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustee, as the case may be, has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the

Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidation Trustee may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 8.6.    Objections

Prior to the Effective Date, the Debtors shall have the right to make and File objections to Claims; provided, however, to the extent that the Objection is not finally determined prior to the Effective Date, the Objection will be a Cause of Action that vests with the Liquidation Trust, and may continue to be pursued only by the Liquidation Trustee. The Liquidation Trustee shall have the right to make and to File objections at any time prior to the one year anniversary of the Effective Date (the "Objection Deadline"). All objections shall be litigated to Final Order unless approval of a settlement or compromise of a claim objection is obtained pursuant to Bankruptcy Rule 9019; provided, however, the Liquidating Trustee has authority to compromise, settle, otherwise resolve or withdraw any objection without further order of the Bankruptcy Court.

### 8.7.    Updates to Claim Register Without Objection

Any Proof of Claim that has been paid or satisfied, in whole or in part, or any Proof of Claim that has been amended or superseded, may be marked as satisfied, in whole or in part, or amended (as applicable) on the Claims Register  at the directions of the Debtors or Liquidation Trustee, as applicable, without a Claims Objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided,* that the Debtors or the Liquidation Trustee, as applicable, shall provide 30 days' notice of any of the foregoing modifications to the Claims Register to the Holder of any affected Claims during which period the Holder may object thereto.

### 8.8.    Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down. No distributions of less than $25.00 will be made on account of Allowed Claims and Interests.


### 8.9.   Setoffs

Except as otherwise provided in the Plan, the Liquidation Trustee may set off against any Claim and the Distributions to be made pursuant to the Plan in respect of such Claim, any claims

of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidation Trustee of any right of setoff against the Holder of such Claim.

### 8.10.  Waiver of Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of security or the making or delivery of an instrument of transfer under the Plan after the Effective Date shall not be taxed under any law imposing a stamp tax or similar tax.

### 8.11.  Time Bar to Cash Payments by Check

Checks issued by the Liquidation Trustee on account of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof, except those returned as undeliverable which shall be dealt with in accordance with Section 8.2. of the Plan. After such date, all Claims in respect of void checks shall be forever barred, and the proceeds of such checks shall revest in the Liquidation Trust and be subject to redistribution, as appropriate, in accordance with the provisions of the Plan.

## ARTICLE 9

## EXECUTORY CONTRACTS UNDER THE PLAN

### 9.1. Rejection of Executory Contracts

All Executory Contracts (other than those previously rejected or assumed and assigned pursuant to an order of the Bankruptcy Court) shall be deemed rejected on the Effective Date or such other date as may be agreed to by the Debtors and the counterparties thereto or ordered by the Bankruptcy Court, and the Debtors and respective counterparties shall be relieved of any further obligation to perform under such agreements.  Rejected Contract counterparties who do not oppose this proposed treatment by opposing Confirmation of the Plan by filing and serving a written objection with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules shall be deemed to have consented to rejection of such Executory Contract. This Plan shall constitute a request pursuant to Bankruptcy Code Sections 1123(b)(2) and 365(a) and the Confirmation Order (except as otherwise provided therein) shall constitute an order of the Bankruptcy Court approving the rejection by the Debtors of all Executory Contracts that have not otherwise been rejected or assumed by order of the Bankruptcy Court.

The Debtors are not aware of any outstanding Executory Contracts to which the Debtors are a party and do not anticipate receiving any Rejection Claims.

### 9.2. Rejection Claims

If the rejection of a Rejected Contract gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be classified as a Class 3 General Unsecured Claim; provided, however, that any Claim arising from the rejection of a Rejected Contract pursuant to this Article 9 shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Liquidation Trust, or their properties, unless a proof of Claim is Filed and served on the Debtors by the Rejection Claims Bar Date.

## ARTICLE 10

## RETENTION OF SUBJECT MATTER
JURISDICTION AND CAUSES OF ACTION

### 10.1. Retention of Subject Matter Jurisdiction

The Bankruptcy Court shall continue to have subject matter jurisdiction of all matters, and over all Persons, arising out of, and relating to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.  To consider and rule on the compromise and settlement of any Claim against or Cause of Action on behalf of the Debtors or the Estates;

b.  To ensure that distributions to Holders of Allowed Claims are accomplished as provided in the Plan;

c.  To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim filed, both before and after the Effective Date, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Claim, in whole or in part;

d.  To hear and determine any and all applications for the allowance of Professional Fees accrued prior to the Effective Date as provided for in the Plan;

e.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

f.  To issue such orders in aid of execution of the Plan, in accordance with section 1142 of the Bankruptcy Code;

g.  To estimate Claims for all purposes under the Plan;

h.      To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan, including any exhibit thereto, or in any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

i.      To hear and determine matters concerning state, local and federal taxes, including but not limited to those in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, with respect to the Debtor or any Person;

j.      To compel the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

k.      To enforce remedies upon any default under the Plan;

l.      To enforce, interpret and determine any disputes arising in connection with any orders, stipulations, judgments and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

m.      To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan and the documents ancillary thereto, or any Person's obligations incurred in connection herewith, including, without limitation, the Liquidation Trust Agreement;

n.      To determine any other matters that may arise in connection with or relate to the Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement;

o.      To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the occurrence of the Effective Date or enforcement of the Plan;

p.      To issue such orders as may be necessary or appropriate in aid of Confirmation and/or to facilitate consummation of the Plan;

q.      To determine such other matters as may be provided for in the Confirmation Order or other orders of the Bankruptcy Court as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

r.      To hear and determine (a) all motions, applications, adversary proceedings, and contested and litigated matters pending on the Effective Date, and (b) all Claims by or against the Debtor arising under the Bankruptcy Code or non-bankruptcy law, if made applicable by the Bankruptcy Code, whether such Claims are

commenced before or after the Effective Date, including, but not limited to, Causes of Action and the Chapter 5 Claims;

s.  To hear and determine all motions and applications filed by the Litigation Trustee in accordance with the Litigation Trustee's obligations and duties under the Litigation Trust and the Plan, including, but not limited to, applications under Bankruptcy Rule 2004;

t.  To hear and determine all Causes of Action, to the extent not described above;

u.  To hear and determine any Claims asserted by: (i) suppliers of goods or services to any of the Debtors; and (ii) any shareholder, insider or affiliate of any of the Debtors, for any actions or omissions prior to the Commencement Date;

v.  To hear and determine any other matter authorized by applicable law; and

w.  To enter a Final Decree.

10.2. **Retention of Causes of Action**

The Plan preserves all Causes of Action, and provides for them to be transferred to the Liquidation Trust on the Effective Date of the Plan.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trust (as successor to the Debtors and the Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action of the Debtors or their Estates, including, without limitation, all Avoidance Actions and all Causes of Action against Google.

**PLEASE TAKE NOTICE THAT ALL CAUSES OF ACTION OF THE DEBTORS AND THEIR ESTATES, WHETHER OR NOT SPECIFIED HEREIN, WILL BE PRESERVED AND TRANSFERRED TO THE LIQUIDATION TRUST PURSUANT TO THE PLAN.**

**THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE PLAN PROPONENTS INTEND FOR THE PLAN TO PRESERVE AND TRANSFER TO THE LIQUIDATION TRUST ANY AND ALL CAUSES OF ACTION HELD BY THE DEBTORS AND THEIR ESTATES AS OF THE EFFECTIVE DATE OF THE PLAN.**

# ARTICLE 11

## MODIFICATION OF PLAN

### 11.1. **Prior to the Confirmation Order**

The Plan Proponents may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to entry of the Confirmation Order. The Plan Proponents shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Code or Bankruptcy Rules or order of the Bankruptcy Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim of such Holder.

### 11.2. **After the Confirmation Order**

After the entry of the Confirmation Order and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Plan Proponents may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan, so long as, such proceedings do not materially and adversely affect the treatment of Holders of Claims under the Plan; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Code or Bankruptcy Rules or an order of the Bankruptcy Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim of such Holder.

# ARTICLE 12

## PROVISIONS REGARDING INJUNCTIONS, EXCULPATION AND THIRD PARTY RELEASES

### 12.1. **Injunction Relating to the Plan**

To the fullest extent provided in Section 1141 of the Bankruptcy Code, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or Liability or interest that is addressed in the Plan are permanently enjoined from taking any action on account of such Claims, debts, Liabilities, or interest, other than actions brought to enforce any rights or obligations under the Plan.

### 12.2. Releases

a.    _**Debtors' Release of Claims Against Officers, Directors and Professional of the Debtors**_. **As of the Effective Date, Debtors shall be deemed to have released all claims in connection with or related to any action or omission taking place after the Commencement Date and prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, and/or the Plan, against the Debtors' present and former directors, officers, financial advisors, attorneys and professionals; provided, however, the foregoing shall not waive or release any causes of action arising out of (i) any contractual obligations owing by any such party, (ii) any Avoidance Actions, or (iii) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such party.**

b.    _**No Release Prior to Petition Date.**_ **For the avoidance of doubt and notwithstanding anything to the contrary in this Plan or otherwise, nothing herein shall release any claims that arose prior to the Petition Date against the Debtors' Principals or any related parties, or affiliates of the Debtors.**

### 12.3. Exculpation

**As of the Effective Date, each (i) Debtor, (ii) each of the respective financial advisors, attorneys, accountants, consultants and other professionals of each Debtor, and (iii) each director of a Debtor (each an "**Exculpated Party**") shall neither have nor incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of each Debtor's Chapter 11 Case.  No Holder of a Claim or Equity Interest or any other party-in-interest, including their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, shall have any right of action against any Exculpated Party relating to, or arising out of the Exculpated Claims, except for such Exculpated Party's own willful misconduct or gross negligence; provided, however, that nothing in the Plan shall, or shall be deemed to, release or exculpate the Exculpated Parties with respect to their obligation or covenants arising pursuant to the Plan.**

## ARTICLE 13

## FEASIBILITY OF THE PLAN

### 13.1. Feasibility.

The Bankruptcy Court must find that Confirmation of the Plan is feasible and not likely to be followed by the need for further reorganization. The Plan Proponents believe that the Debtors will have enough cash on hand on the Effective Date to pay all of the Claims and

expenses that are entitled to be paid on that date. Nevertheless, the majority of the payments required to be made on the Effective Date are Professional Fee Claims, and all of the Debtors' professionals have agreed that if there is insufficient cash to pay their Allowed Professional Fee Claims in full, such Claims will be carried over to the Liquidation Trust and be paid from the Liquidation Trust Recoveries. Therefore, all of the initially required payments are feasible.

Future payments under the Plan are dependent on Liquidation Trust Recoveries. The Plan Proponents believe that the Causes of Action are viable and valuable and will result in significant Liquidation Trust Recoveries. In addition, the Debtors are in the process of retaining a law firm on favorable terms which will guarantee the ability to prosecute certain of the most valuable  Causes of Action. The Plan Proponents cannot project how much each Claim Holder is likely to receive, as, it is dependent entirely on the Litigation Trust Recoveries which cannot be estimated.


## ARTICLE 14

## LIQUIDATION VALUATION

### 14.1.  Liquidation Analysis.

To confirm the Plan, the Bankruptcy Court must find that all Holders of Claims and Equity Interests who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interests Holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit A and demonstrates that this is the case. The Exhibit demonstrates that if the Debtors were liquidated today, only the Administrative Claims and Priority claims would receive a distribution. All other Creditors and Equity Interest Holders would receive nothing. While the plan does not guarantee that such Creditors and Equity Interests Holders, will receive a distribution, the ability of the Liquidation Trust to pursue Causes of Action at least offers a prospect that the Creditors and Equity Interests Holders may receive a distribution. The Plan Proponents believe that the proposed Plan is the best chance for Creditors and Equity Interests Holders to receive more than they would receive in a liquidation.


## ARTICLE 15

## MISCELLANEOUS PROVISIONS

### 15.1. Governing Law

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR OTHER FEDERAL LAW IS APPLICABLE, OR TO THE EXTENT A SCHEDULE OR EXHIBIT HERETO OR INSTRUMENT, AGREEMENT OR OTHER DOCUMENT EXECUTED UNDER THE PLAN PROVIDES OTHERWISE, THIS PLAN, THE RIGHTS, DUTIES AND OBLIGATIONS ARISING UNDER THIS PLAN, AND ANY CLAIM OR CONTROVERSY

DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS PLAN OR THE TRANSACTIONS CONTEMPLATED BY THIS PLAN (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, SHALL IN ALL RESPECTS BE GOVERNED BY AND INTERPRETED, CONSTRUED AND DETERMINED IN ACCORDANCE WITH, THE INTERNAL LAWS OF NEW YORK WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISION THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION.

### 15.2. Notices

All notices, requests and demands to be effective shall be in writing (including by facsimile transmission and email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors:

Mayerson & Hartheimer, PLLC
845 Third Ave., 11th floor
New York, NY 10022
Attn: Sandra E. Mayerson, Esq.
David H. Hartheimer, Esq.
Email:  sandy@mhlaw-ny.com
david@mhlaw-ny.com

To the Liquidation Trustee:     Peter S. Kaufman
Gordian Group, L.P.
950 Third Ave.
17th floor
New York, NY 10022
Email: psk@gordiangroup.com

### 15.3. Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Bankruptcy Case are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Case shall be bound or deemed prejudiced by any such concession or settlement.

### 15.4. Binding Effect

The rights, benefits and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

Dated:  November 8, 2019

**DEBTORS:**

UNLOCKD MEDIA, INC.

By: /s/ Matthew Berriman
Name:                                    Matthew Berriman
Its:                                        Director

UNLOCKD OPERATIONS US INC.
By:                                        /s/ Matthew Berriman
Name:                                    Matthew Berriman
Its:                                        Director____

# **EXHIBIT A**

### Liquidation Analysis

The Small Business Debtors' Combined Plan of Liquidation and Disclosure Statement (the "Plan") must meet the requirements of Section 1129(a) of the Bankruptcy Code, including Section 1129 (a)(7) requiring that each holder of an impaired class of claims or interest either (a) accept the Plan, or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

The Plan Proponents believe that if a Holder of an Impaired Claim votes against the Plan, such Holder will receive or retain property that is not less than the value such Holder would receive if the Debtors were liquidated based on the following Liquidation Analysis which: (a) estimates the cash liquidation proceeds that a Chapter 7 trustee would generate if the assets of such Debtor's estate were liquidated pursuant to Chapter 7 of the Bankruptcy Code; (b) determines the liquidation distribution that each non-accepting Holder of a claim or an interest would receive from such liquidation proceeds under the priority scheme dictated in Chapter 7; and (c) compares the Holder's liquidation distribution to the distribution that the Holder would receive if the plan were confirmed and consummated.

The Debtors estimated a range of proceeds that would be generated from a hypothetical Chapter 7 liquidation. The Liquidation Analysis was prepared by the Debtors with assistance from their financial advisor. This Liquidation Analysis represents the Debtors' estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis estimates the impact on the Debtors' assets in the hypothetical scenario that the Debtors' Chapter 11 cases are converted into liquidations under Chapter 7.

THE DEBTORS BELIEVE THAT ANY ANALYSES OF A HYPOTHETICAL LIQUIDATION IS UNAVOIDABLY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY UNCERTAIN AND ARE BEYOND THE CONTROL OF THE DEBTORS, THEIR PROFESSIONALS, OR A CHAPTER 7 TRUSTEE.

THE LIQUIDATION ANALYSIS, HAVE NOT BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE IS NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

The Liquidation Analysis has been prepared solely for the purposes of estimating the proceeds that would be available if the Debtors liquidated under Chapter 7 of the Bankruptcy Code for purposes of the "best interests" test and does not represent values that may be appropriate for any other purpose, including the values applicable in the context of the Plan. Nothing contained in the

Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical liquidation analysis, as required by the "best interests" test.

General Assumptions

The following is a list of key assumptions that were utilized in the Liquidation Analysis:

- The Liquidation Analysis assumes that the liquidation of the Debtors assets would begin on November 8, 2019, under the direction of a court-appointed Chapter 7 trustee.
- The book value of the assets presented is based on the combined listed value presented on each of the Debtor's filed Schedule A, unless otherwise noted.
- The Liquidation Analysis assumes that liquidation at distressed amounts due to the abbreviated time period given to liquidate the Debtors' assets.
- Proceeds are net of all costs assumed to be incurred and further reduced by administrative costs incurred during the wind-down of operations, and the reconciliation of claims. These costs include trustee fees. The Liquidation Analysis assumes that net proceeds from the sale of the assets will be distributed in accordance with the Bankruptcy Code and that no distributions will be made to junior creditors or equity holders until all senior creditors are paid in full.
- The Liquidation Analysis assumes that the Chapter 7 trustee will not have the time nor the financial resources to pursue any Causes of Action.

,
The liquidation analysis below is shown on a consolidated basis and reflects the estimated cash proceeds, net of liquidation-related costs, that would be realized if the Debtors liquidated under chapter 7 of the Bankruptcy Code commencing immediately and accomplishing same over a 90 day horizon.

| Liquidation Analysis | Ref. | Book Value | Low Recovery | % | High Recovery | % |
|---|---|---|---|---|---|---|
| Assets | | | | | | |
| Cash, & Cash Equivalents | a | $ 239,120 | $ 239,120 | 100% | $ 239,120 | 100% |
| Accounts Receivable | b | 82,769 | 4,138 | 5% | 12,415 | 15% |
| Prepaid Expenses | c | 61,875 | - | 0% | - | 0% |
| Office Furniture, Fixtures, and Equipment | d | 58,114 | - | 0% | - | 0% |
| Intercompany Loans | e | 333,139 | - | 0% | - | 0% |
| Total Assets at Book Value | | $ 775,018 | | | | |
| | | | | | | |
| Total Gross Estimated Liquidation Proceeds | | | $ 243,259 | | $ 251,536 | |
| | | | | | | |
| | | | | | | |
| Chapter 7 Trustee Administrative Costs | f | | $ 15,413 | 100.0% | $ 15,827 | 100.0% |
| Chapter 11 Professional Fees | g | | 232,356 | 100.0% | 232,256 | 100.0% |
| | | | | | | |
| Estimated Liquidation Proceeds to be Disbursed to Claimants | | | $ (4,510) | | $ 3,453 | |
| | | | | | | |
| Preliminary: | | Claim | Distribution | % | | |
| Class 1: Priority Claims | | 3,550 | - | 0% | 3,453 | 97% |
| Class 2: Secured Claims | | - | - | 0% | - | 0% |
| Class 3: General Unsecured Claims | | 2,200,608 | - | 0% | - | 0.0% |
| Class 4: Intercompany Loans | | 9,373,395 | - | 0% | - | 0% |
| Class 5: Equity Interests | | Not Calculated | - | 0% | Not Calculated | 0% |

**Notes to Consolidated Liquidation Analysis**

A. Cash and Cash Equivalents:  The cash balances reflected above represent the actual cash balance as of November 9, 2019.  A 100% recovery is estimated.

B. Accounts Receivable:  The Accounts Receivable balance was estimated based on the reported amount on the October 2019 Monthly Operating Report.  The low and high recovery rates of 5% and 15%, respectively, reflect the age of the Accounts Receivable, as, the majority of accounts are over sixteen months past due.

C. Prepaid Expenses: The prepaid expense in the form of an office lease deposit is not recoverable; since, the Debtors abandoned the leasehold premises pre-petition, and the landlord pursued eviction proceedings and is entitled to keep the deposit pursuant to court order.

D. Office Furniture, Fixtures, and Equipment:  Office furniture, computers, and leasehold improvements were liquidated prior to the bankruptcy and have no liquidation value.

E. Intercompany Loans:  All of the Debtors' foreign affiliates are under Administration or have been dissolved; there is no recovery potential.

F. Chapter 7 Administrative Trustee Costs: Chapter 7 Trustee costs were calculated based on total disbursements using the current Fee Schedule. No allowance has been made for professionals of the Trustee, which is likely to increase the administrative costs and reduce the distribution on Priority Claims.

G. Chapter 11 Professional Fees: Total amount claimed by Mayerson & Hartheimer PLLC through November 7, 2019, is $199,483, which includes $10,964 as a 20% holdback from the First Fee Application, and fees and expenses in the amount of $186,403, and $2,116.38, respectively, which have not yet been requested by Fee Application or Allowed. This amount is likely to increase. Total amount claimed by Vernon Consulting, Inc through November 7, 2019 is $32,873.40, which includes $6,297.50 as a 20% holdback from the First Fee Application, and fees and expenses in the amount of $26,250.00 and $325.90, respectively, which have not yet been requested by The Application or Allowed. .Professional expenses were assumed to cease as of November 8, 2019, given the hypothetical assignment to a Chapter 7 Trustee for liquidation.

Comparison

The Liquidation Analysis shows that while in a best case scenario the Priority Claims may receive a partial payment, no other Holders of Claims or Equity Interests would receive any distributions whatsoever. Under the Plan, Administrative and Priority Claims would be paid the same as in the liquidation analysis, unless they agreed to a different treatment, as the Debtors' professionals have. The remaining Holders of Claims and Interests would not receive any distribution on the Effective Date, the same as in the liquidation scenario; however, they would have the possibility of a substantial recovery through the pursuit of Causes of Action by the Liquidation Trust. As a result, the Plan Proponents admit that the Plan actually provides the Holders of Impaired Claims and Interests more than they would receive in a liquidation.